UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELIZABETH WILSON,<br><br>    Plaintiff,<br><br>    v.<br><br>PHARMERICA CORPORATION LONG TERM DISABILITY PLAN and AETNA LIFE INSURANCE COMPANY,<br><br>    Defendants. | Civil Action No. 14-cv-12345-LTS<br><br><br><br>**MEMORANDUM AND ORDER** |

**CABELL, Magistrate Judge**:

This matter comes before the Court upon a motion for a protective order [Dkt #55] filed by the defendant, Aetna Life Insurance Company ("the defendant" or "Aetna"). Aetna has been ordered to produce certain documents and seeks an order prohibiting the plaintiff, Elizabeth Wilson ("the plaintiff"), from disseminating or making use of any of the materials outside of the present case. The plaintiff opposes the motion [Dkt #59]. For the reasons set forth below, the defendant's motion is GRANTED in part and DENIED in part.

I. **RELEVANT FACTUAL BACKGROUND**

The plaintiff suffers from a mental health related condition. On April 27, 2009, she began receiving long-term disability benefits pursuant to an insurance plan provided by her employer, Pharmerica Corporation, and co-administered and insured by Aetna. Aetna subsequently terminated her benefits two years later, on April 27, 2011, pursuant to a 24 month policy limitation for mental health conditions. The plaintiff subsequently brought this action against Aetna and her employer seeking a declaration under the Employee Retirement Income Security Act of 1974 ("ERISA") that she is entitled to continued long-term disability benefits pursuant to her employee

benefits plan.  On January 20, 2015, the plaintiff filed a motion for discovery [Dkt #31] seeking documents relating to Aetna's adjudication of her claim.  In addition, because Aetna both insures and administers claims for long-term disability benefits, the plaintiff sought documents and responses to interrogatories relating to Aetna's potential conflict of interest in fulfilling both roles.

On May 1, 2015, the Court granted the motion in part and ordered Aetna to produce certain categories of documents [Dkt #51].  Of those, Aetna identifies four categories of documents it contends should be subject to a protective order.  They include: (1) internal guidelines regarding Aetna's 24 month limitation policy; (2) information surrounding the firewall Aetna has in place to eliminate any conflict of interest between those who administer plans and those who make benefits determinations; (3) information surrounding Aetna's financial arrangements with the MES Group, Inc. ("MES"), a third-party vendor providing medical consultant services; and (4) information surrounding Aetna's financial arrangements with individual physicians retained as medical consultants.  Aetna argues that the foregoing information is confidential and that its dissemination to others outside of the present litigation could give Aetna's competitors and other medical service providers sensitive information which could in turn be used to Aetna's financial detriment.  The plaintiff, analogizing this case to those where courts have found the attorney-client privilege to not shield information from disclosure where the insurer acts as a fiduciary, urges the Court to similarly view Aetna as a fiduciary of the employee benefits plan who thus should not be able to shield its decision-making or process from any plan participants.[1]

---

[1] The Court has no issue with the principal thrust of the plaintiff's analogy – a fiduciary should not be seeking to withhold information from those it owes a duty to, but its use is somewhat misplaced here.  Aetna is not arguing that it should not have to disclose information to the plaintiff.  Rather, Aetna argues that some of the information that it has been ordered to produce, and will produce, could be used to harm Aetna if disseminated to others not connected to the case, and it seeks only to place some conditions on the use of the information to ensure that this potential harm does not come to pass.  To the extent the plaintiff is heard to argue that a fiduciary/party is not entitled as a matter of law to seek a protective order to restrict dissemination of disclosed materials to others unrelated to the case, the Court rejects that argument and notes that none of the cases the plaintiff cites supports such a broad proposition.

## II. **DISCUSSION**

Federal Rule of Civil Procedure 26(c)(1)(G) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense … [by] requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed in a specified way[.]"  "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Irizarry-Santiago v. Essilor Indus.*, 293 F.R.D. 100, 103 (D.P.R. 2013) (citations omitted).  Further, "[a] finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986) (citations omitted).  Where documents contain things such as "business strategies, cost saving measures, operational trends, pricing, parts, item costs, purchasing, vendor information, confidential personnel data, litigation strategies, budget information, and sales volume" then good cause has been established as disclosure of such documents would "cause a clearly defined and serious injury to [the movant's] business." *Irizarry-Santiago*, 293 F.R.D. at 104.  Here, Aetna has demonstrated that good cause exists with respect to protecting two of the four categories of documents.

    a. <u>Internal Guidelines Regarding Aetna's 24 Month Limitations Policy</u>

Aetna concedes that most if not all of its competitors have some sort of policy akin to a 24 month limitation period on benefits applicable to cases involving a mental health or psychiatric condition.  However, Aetna contends that the specific way it goes about implementing its policy is confidential, and distinguishes Aetna from its competitors, and thus is deserving of protection from disclosure.  At the Court's request, Aetna submitted a copy of its protocols, a single sheet, to the Court for an *in camera* review.  Based on that review, the Court does not agree that

dissemination of the document would result in any articulable harm to Aetna. Rather, the document appears to set out an internal, practical roadmap for Aetna employees to use when processing claims for disability benefits under this part of the benefits plan. For example, and among other things, the protocols provide guidance on when during the 24 month period to send certain materials to policyholders, when to consider conducting certain examinations, what information should be monitored, and when claims should be referred to other sections within Aetna. By contrast, the document does not reveal any substantive information that might give any insight as to how Aetna decides to accept or reject a claim. Similarly, the document does not reveal any specific business strategies, cost saving measures, or specific issues relating to mental disabilities triggering the limitation. Accordingly, the Court finds that Aetna has failed to show good cause why a protective order should be issued regarding this document and this portion of the defendant's motion is therefore DENIED.

      b.   Documents Regarding Structural Conflict of Interest

Aetna has also failed to show how producing documents that involve its efforts or procedures to prevent or mitigate the effect of any structural conflict of interest would harm it in the marketplace. At oral argument Aetna suggested one possible consequence could involve a scenario where a competitor, armed with such information, could persuade a potential customer that it could do a better job preventing an internal conflict of interest than Aetna could. Given the lack of any other information or further elaboration on this subject matter, however, the Court is not in a position to assess the reasonableness of Aetna's argument. Aetna has not provided any documents to the Court for an *in camera* examination, and has not provided any additional information addressing the relative importance of this issue to potential clients. Consequently, just as it might be reasonable to assume that prospective clients might not be overly concerned with an

insurer's internal structure as it bears on the potential for some conflict of interest, it is equally reasonable to assume that sophisticated companies shopping for benefits plans in the marketplace are in fact greatly interested in this matter and routinely ask specific questions in order to assess the risk of a potential conflict of interest that could inure to the detriment of plan participants.  For purposes of the present motion, it is not necessary to seek further clarification.  Because Aetna has not demonstrated to the Court's satisfaction that disclosure of this information is likely to harm Aetna in the marketplace, it has not shown good cause for a protective order and this portion of the motion is accordingly DENIED.

      c.    Aetna's Financial Arrangements with MES

The Court agrees with Aetna and finds that public disclosure of documents involving Aetna's dealings with MES, an independent third party medical consultant, may indeed harm both Aetna and/or MES in the marketplace.  In support of its motion, Aetna included the affidavit of Ghassan Bahnam, M.D., MES's senior vice president of quality and development.  Dr. Bahnam asserted that MES "maintains proprietary, confidential and highly sensitive information which is integral to MES's business model … [and] [c]ompensation paid by Aetna … to MES constitutes such confidential information." *See Affidavit of Ghassan Bahnam, M.D.*, at ¶¶ 5-6.  Specifically, MES operates in a competitive market and public disclosure of its pricing arrangements with Aetna may allow MES's competitors to undercut pricing of MES's services, resulting in a substantial loss of business for MES.  *Id.* at ¶ 7.  Similarly, MES is one of several vendors Aetna utilizes in its operations and disclosure of its pricing arrangements with MES may result in other vendors demanding more money from Aetna.  Vendor information is precisely the type of sensitive information courts have found to be worth protecting.  *See Irizarry-Santiago*, 293 F.R.D. at 104.

As such, the defendant has shown good cause to protect this information from disclosure to third parties and this portion of the motion is therefore ALLOWED.

### d.   Aetna's Financial Arrangements with Other Medical Consultants

Lastly, Aetna seeks to protect documents surrounding its dealings with independent individual physicians as medical consultants. Aetna submitted an affidavit from Michael A. Corarito, a business consultant with Aetna Review Consultant Services ("ARCS"). Mr. Corarito explains that Aetna "has a panel, known as the ARCS Panel, of medical reviewers, all of whom are directly contracted consultants. The reviewers on the ARCS panel are paid an hourly rate depending on their experience and specialty. The reviewers are not paid the same rates, and their rates instead vary depending on the outcome of contract negotiations related to retaining them as consultants to the panel." *See Affidavit of Michael A. Corarito*, at ¶ 4. As noted above, to the extent Aetna's financial arrangement with an individual medical consultant is publicly disclosed, another consulting physician might either attempt to underbid the consultant to take his or her business, or demand more money from Aetna upon seeing what the other physician is being paid. While it would have been helpful to know whether Aetna also typically includes confidentiality provisions in its agreements with medical consultants, the Court is satisfied on balance that the wholesale disclosure of these arrangements would be harmful to both Aetna and the consultants. This portion of the motion is therefore ALLOWED.

## III. ORDER

For the foregoing reasons, the defendant's motion for a protective order [Dkt #55] is ALLOWED in part to the extent it seeks to protect information relating to MES as well as documents relating to Aetna's contracts with individual consulting physicians and examiners (the "confidential material"); and DENIED in part to the extent it seeks to protect information relating

6

to the 24 month limitation or the firewall it uses to mitigate the risk of a conflict of interest.

The Court hereby orders that all confidential material shall be subject to the following limitations on use and disclosure:

1. All confidential material produced or disclosed in this case shall be marked "confidential" upon production or disclosure to the plaintiff;

2. Confidential material shall only be disclosed to the plaintiff's counsel, others in the office of the plaintiff's counsel who have a need to review confidential material for purposes of the current litigation, the plaintiff and the Court;

3. The plaintiff and any individuals in the office of the plaintiff's counsel to whom confidential materials are disclosed shall be advised by the plaintiff's counsel of the terms of this Order and that they are bound by the limitations on disclosure set forth in this Order. Any such individuals shall not further disclose confidential material to anyone or for any purpose;

4. The plaintiff's counsel may disclose confidential material to consultants or experts retained for purposes of this litigation with such disclosure to be made for purposes of this litigation only, but must first advise any such consultants or experts of the terms of this Order and that they are bound by the limitations on disclosure set forth herein.  Any such consultants or experts shall not further disclose confidential material to anyone or for any purpose, and shall return the original and all copies of any confidential material provided to them upon conclusion of this litigation or their retention, whichever occurs first;

5. Confidential material shall not be disclosed or used for any purpose other than litigation of the instant action;

6. Confidential material shall not be disclosed by the plaintiff or the plaintiff's counsel to any other party, natural or corporate person, or entity for any purpose, other than those set forth in this Order;

7. Motions, memoranda or other filings with the Court that contain, include as exhibits, quote from or otherwise disclose or reference confidential materials shall be filed with the Court under seal;

8. At the conclusion of this litigation, the plaintiff's counsel shall return all originals or copies of confidential material to counsel for the defendant.

**SO ORDERED.**

                                          /s/ Donald L. Cabell
                                          DONALD L. CABELL
                                          United States Magistrate Judge

DATED: July 29, 2015